IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER CAROL POE SCHEEL, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-5077 |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Jennifer Carol Poe Scheel ("Scheel" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying her claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.[1] For the reasons that follow, Scheel's Request for Review will be denied.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Scheel was born on July 21, 1967.  R. at 25.[2]  She is able to speak, read, understand, and write in English.  Id.  Scheel has a master's degree in professional communication.  Id. at 35. Her past relevant work experience was as a manager, advertising.  Id. at 24.  Scheel applied for DIB benefits on May 14, 2018, alleging that she became disabled on September 19, 2017 due to multiple sclerosis.  Id. at 53.  Her application was initially denied on September 26, 2018.  Id. at 13.  Scheel then filed a written request for a hearing on October 12, 2018, id. at 13, and an

---

[1]   In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment.  See Doc. Nos. 2, 7.

[2]   Citations to the administrative record will be indicated by "R." followed by the page number.

Administrate Law Judge ("ALJ") held a hearing on her claim on July 17, 2019, id. at 30-50. At the administrative hearing, Scheel, through her representative, amended her onset date to February 9, 2018. Id. at 13, 35-36. On August 28, 2019, the ALJ issued an opinion denying Scheel's claim. Id. at 10-29. Scheel filed an appeal with the Appeals Council, which the Appeals Council denied on August 31, 2020, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Scheel then commenced this action in federal court.

## II. THE ALJ'S DECISION

In her decision, the ALJ found that Scheel had not engaged in substantial gainful activity since February 9, 2018, the amended alleged onset date. Id. at 15. The ALJ determined that Scheel suffered from the severe impairment of relapsing-remitting multiple sclerosis. Id. The ALJ concluded that Scheel did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment. Id. at 15-17. The ALJ found that, during the relevant period, Scheel had the residual functional capacity ("RFC") to perform:

> Light work as defined in 20 CFR 404.1567(b) except she is limited to simple, routine tasks performed at the low end of the stress spectrum meaning that the same duties can be performed at the same station or location from day to day and any production criteria can be made up by the end of the workday or shift, and to avoid distraction, there should be no contact with the general public.

Id. at 17. Based on this RFC determination, and relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that Scheel could perform, such as housekeeper/cleaner, sorter, and marker. Id. at 25. Accordingly, the ALJ concluded that Scheel was not disabled. Id. at 26.

**III.     SCHEEL'S REQUEST FOR REVIEW**

In her Request for Review, Scheel contends that the ALJ erred by improperly ignoring the opinion of her treating neurologist without explanation.

**IV.     SOCIAL SECURITY STANDARD OF REVIEW**

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period.  42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1).  As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) (references to other regulations omitted).

**V.      DISCUSSION**

Scheel argues that the ALJ's opinion was not supported by substantial evidence because the ALJ improperly ignored the opinion of her treating neurologist, Paul Shipkin, M.D., P.C., without explanation.  Pl.'s Br. (Doc. No. 13) at 6-8.  This argument lacks merit.

Under applicable regulations and controlling case law,[3] when considering a medical

---

[3]    The Commissioner made "sweeping changes" to the rules regarding the evaluation of medical opinion evidence that became effective on March 27, 2017.  Lepperd v. Berryhill,

(Footnote continued on next page)

opinion, the ALJ is not required to give any "specific evidentiary weight, including controlling weight" to any one opinion. 20 C.F.R. § 404.1520c(a). Instead, the ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." Id. § 404.1520c(a)-(c). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." Id. § 404.1520c(a). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Heisey v. Saul, No. 20-324, 2020 WL 6870738, at *9 (E.D. Pa. Nov. 23, 2020). "The more relevant the medical evidence and supporting explanations provided by a medical source are to support his or her medical opinion . . . , the more persuasive the medical opinion . . . ." 20 C.F.R. § 404.1520c(c)(1). In addition, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion . . . will be." Id. § 404.1520c(c)(2).

Dr. Shipkin, a specialist in neurology/neuro-ophthalmology, wrote a letter dated June 26, 2018 to counsel for Scheel, in which he summarized his treatment relationship, beginning with when he first saw Scheel in December 2004. R. at 300. At that time, he concluded that she had "transient neurologic symptoms involving vision, sensation, slurred speech, equilibrium, and coordination, etc.," however a "diagnosis . . . such as multiple sclerosis could not be firmly made

---

No. 16-02501, 2018 WL 1571954, at *6 n.10 (M.D. Pa. Feb. 20, 2018) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017)), report and recommendation adopted, No. 16-2501, 2018 WL 1566662 (M.D. Pa. Mar. 30, 2018). Those changes abandoned the treating-physician rule. See 20 C.F.R. § 404.1520c. Because Scheel filed her application for DIB benefits after March 27, 2017, all medical opinions will be evaluated in accordance with the changed rules.

based on available data at that time . . . ." Id. Dr. Shipkin noted that an MRI of the brain done on September 24, 2013 revealed "multiple new lesions involving the right cerebral hemisphere in this patient with a history of multiple sclerosis. These are compatible with new demyelinating lesions. There is abnormal restricted diffusion and enhancement involving two of the lesions, compatible with active demyelination . . . ." Id. Dr. Shipkin then noted that Scheel was most recently seen in his office on May 16, 2018, at which time she "provided additional historical data regarding her neurologic status." Id. Dr. Shipkin's letter reiterated Scheel's reporting of her symptoms, but provided no information about whether or not Dr. Shipkin performed a physical examination and, if so, what the results of that examination were. Id. at 300-01. Ultimately, Dr. Shipkin stated that, given Scheel's reporting of symptoms, "it is [his] neurologic opinion that [] Scheel is not capable of gainful employment at this time." Id. at 301.

Although Scheel contends that the ALJ failed to give adequate weight to the opinion and findings of Dr. Shipkin, Dr. Shipkin did not render any opinions pursuant to the Social Security regulations. Once again, because Scheel applied for benefits on or after March 27, 2017, the applicable regulations provide:

> A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:
>
> > (i) [the claimant's] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) [the claimant's] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) [the claimant's] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

>> (iv) [the claimant's] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Here, Dr. Shipkin's letter does not qualify as a medical opinion that the ALJ was required to evaluate. Indeed, Dr. Shipkin never opined on Scheel's functional limitations or what activities she could or could not perform in a work setting, or otherwise articulated Scheel's work-based limitations. Accordingly, Dr. Shipkin's letter does not contain an "opinion" as defined in the regulations. Moreover, the new regulations specifically instruct that "[s]tatements that [the claimant is or is not] disabled, blind, able to work, or able to perform regular or continuing work" is a statement on an issue reserved to the Commissioner and therefore "is inherently neither valuable nor persuasive." Id. § 404.1520b(c). Thus, for such statements, the regulations do not require the ALJ to provide "any analysis about how [he or she] considered such evidence in [his or her] determination or decision, even under § 404.1520c." Id. Thus, the ALJ acted in accordance with the governing federal regulations when she did not consider or weigh Dr. Shipkin's statement that "Scheel is not capable of gainful employment at this time." R. at 301.

Nevertheless, contrary to Scheel's assertion that the ALJ failed to address Dr. Shipkin's treatment of Scheel, Pl.'s Br. at 6, the ALJ properly considered and discussed Dr. Shipkin's treatment records and cited them as evidence, where appropriate, including to show that Scheel's limitations were less disabling than alleged. As the ALJ summarized, in May 2018, in a Second-Level Medical Necessity Appeal letter in support of Lyrica, Dr. Shipkin stated that Scheel was receiving Ocrevus infusions for multiple sclerosis and was having severe paresthesia and dysesthesia, especially involving her left and right upper extremities. R. at 21 (citing id. at 289). She had previously taken Gabapentin, but that medication was poorly tolerated, causing a number of side effects. Id. Dr. Shipkin stated that, at that point in time, he believed Lyrica was

7

medically necessary to help relieve Scheel's medical issues.  Id.  However, that same day, Scheel reported to Dr. Shipkin that she was "physically . . . pretty good" and had completed the Broad Street Run.  Id. (citing id. at 290).  Dr. Shipkin noted that Scheel was "better than" her last examination in August 2017 "overall."  Id. (citing id. at 290).

To the extent that Scheel contends that the ALJ should have discounted the opinions of physical consultative examiner, Ziba Monfared, M.D., and State agency medical consultant, John Simmons, M.D., because they did not specialize in multiple sclerosis, unlike Dr. Shipkin, Pl.'s Br. at 6-7, that argument likewise fails.  Specifically, Dr. Monfared conducted an internal medicine consultative examination on September 11, 2018.  R. at 305-18.  At the examination, Scheel appeared to be in no acute distress, her gait was normal, and she could walk on heels and toes without difficulty.  Id. at 306.  Her squat was full, her stance was normal, and she used no assistive devices.  Id.  She needed no help changing for the examination or getting on and off the exam table and was able to rise from her chair without difficulty.  Id.  Her strength was "5/5" in both her upper and lower extremities.  Id. at 307.  Scheel's hand and finger dexterity were intact, her grip strength was "5/5" bilaterally, and she was able to zip, button and tie with either hand.  Id.  Dr. Monfared diagnosed Scheel with multiple sclerosis, but listed her prognosis as "good."  Id.  Dr. Monfared completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), in which she opined that Scheel could continuously lift and carry up to 50 pounds, and occasionally lift up to 100 pounds.  Id. at 309.  She also opined that she could sit, walk, and stand eight hours continuously in a workday.  Id. at 310.  Dr. Monfared found that Scheel had no limitations in reaching, handling, fingering, feeling, pushing or pulling in either her right or left hands, and could frequently operate foot controls with both feet.  Id. at 311.  Dr. Monfared also determine that Scheel could frequently perform all postural activities.  Id. at 312.

The ALJ found that this opinion was "generally well supported but less persuasive in light of the nature of [Scheel's] illness, which includes episodes of flares or exacerbations," and consequently, included more limitations in Scheel's RFC. Id. at 24.

The ALJ also evaluated the opinion of the State agency medical consultant, Dr. Simmons, who determined that Scheel was capable of performing medium work. Id. (citing id. at 59). Once again, the ALJ found that this opinion was "generally well supported by the clinical and objective findings," but found that the Scheel's "disease, including periods of exacerbations, is more restrictive and more in line with a finding of light exertional activity." Id.

To the extent that Scheel challenges the ALJ's findings that these opinions were persuasive even though neither Dr. Monfared nor Dr. Simmons specialized in multiple sclerosis, see Pl.'s Br. at 6-7, there is no requirement that a reviewing state agency medical consultant or a consultative examiner specialize in the specific condition for which the claimant is seeking a disability. Rather, specialization is one of several factors the ALJ may, but is not required to, discuss when evaluating the persuasiveness of an medical opinion. See 20 C.F.R. § 404.1520c(b)(2) (The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate . . . ."); id. § 404.1520c(c)(4) ("The medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty . . . ."). Here, the ALJ's findings that Drs. Monfared's and Simmons' opinions were persuasive were amply supported by the clinical and objective findings, including that Scheel was found to have normal gait, a full squat, a normal stance, full strength, no sensory deficits, no need for assistive devices, 5/5 grip strength, intact hand and finger dexterity, and the ability to zip, button and tie bilaterally.

Moreover, the ALJ's determination was supported by the daily activities that Scheel was still capable of performing, including doing laundry, shopping, driving, crafting, and running, including participating in the Broad Street Run. R. at 290, 325-26. Nevertheless, to account for her multiple sclerosis and periods of flares and symptom exacerbation, the ALJ limited Scheel to light work, as opposed to medium to heavy work opined by Drs. Monfared and Simmons. Id. at 24, 58-59, 309-14. This assessment was amply supported by the record.

Likewise, the ALJ's assessment of Scheel's mental limitations was supported by substantial evidence. The ALJ evaluated the opinion of consultative examiner, Amanda Kochan-Dewey, Psy.D., who performed a mental status and intelligence evaluation on September 18, 2018. Id. at 24, 322-29. Scheel's speech was fluent and her expressive and receptive language was adequate. Id. at 323. Her thought process was coherent and goal directed and she had a full range of affect, which was appropriate to speech and thought content. Id. She was alert and oriented "x3" and her attention and concentration and recent and remote memory skills were intact. Id. at 323-24. Dr. Kochan-Dewey performed memory testing, the results of which indicated that Scheel had a "mild level of scatter," but otherwise no serious memory problem. Id. at 23, 325. Dr. Kochan-Dewey stated that although there appeared "to be a slight weakness in Delayed Memory, . . . [it] [was] not significant enough at this time to warrant a diagnosis." Id. at 325. Her prognosis was listed as "good." Id. at 326. Dr. Kochan-Dewey ultimately opined that Scheel had no restrictions for any work-related mental activities. Id. at 327-28. The ALJ found this opinion to be unpersuasive in light of Scheel's testimony of cognitive difficulties and the "overlay of symptoms from [Scheel's] MS." Id. at 24. Instead, the ALJ credited Scheel's subjective complaints regarding her cognitive difficulties by including multiple non-exertional limitations in Scheel's RFC. Id. at 17, 24.

Moreover, Scheel's argument that "[t]he ALJ focused solely on [] Scheel's periods of remission, such as the day she was able to complete the Broad Street Run," and "ignored the course of [] Scheel's multiple sclerosis over the period preceding adjudication," lacks any merit. Pl.'s Br. at 7. Throughout the course of her opinion, the ALJ specifically accounted for Scheel's past periods of exacerbation in determining that she was capable of performing light work with non-exertional limitations. Indeed, the ALJ summarized that Scheel "has a severe impairment with an acute exacerbation in May 2017, when she could not feel anything below the neck." R. at 22 (citing id. at 245). The ALJ indicated that even though her strength was 5/5 at that time, she was noted to be clumsy and had trouble with hopping and tandem gait. Id. (citing id. at 248). Moreover, an MRI showed progression of disease and active lesions during this period of exacerbation. Id. (citing id. at 246). The ALJ acknowledged that several treatments were tried; however, the flare lasted less than a year and Scheel returned to running, even completing the Broad Street Run. Id. Indeed, although Drs. Monfared and Simmons opined that Scheel was capable of medium to heavy work, the ALJ assessed that Scheel was only capable of light work due to "the nature of [her] illness, which includes episodes of flares or exacerbations." Id. at 24; see also id. (finding that the opinion of Dr. Simmons was "generally well supported" but that Scheel's "disease, including periods of exacerbations is more restrictive and more in line with a finding of light exertional activity"). Moreover, the ALJ also found "the nature of [Scheel's] disease, its exacerbations, warrant non-exertional limitations." Id. Accordingly, the ALJ restricted Scheel to "simple, routine tasks performed at the low end of the stress spectrum" as well as "no contact with the general public" to avoid distraction. Id. at 17. The ALJ imposed these restrictions even though her mental status examinations were entirely normal, including normal attention, concentration and memory during a flare in May 2017 and November 2017, id.

at 246, 270; she received no professional mental health treatment, id. at 57; and her own medical providers never referred her for a neurocognitive evaluation, id. at 23.  Consequently, the ALJ appropriately accounted for the intermittent periods of exacerbation when assessing Scheel's RFC.

Finally, to the extent Scheel argues that the ALJ failed to adopt the testimony of the VE that there was no work for someone who would be off task 20 percent of the workday and absent two to three times per month, Pl.'s Br. at 8 (citing R. at 49), this argument is unpersuasive.  The VE's testimony "concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).  An ALJ is not required to include in a claimant's RFC those impairments that he or she finds are not credibly established by the evidence.  Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 147 (3d Cir. 2007).  It was Scheel's burden to present evidence to establish that she was unable to engage in any substantial gainful activity.  Santiago v. Comm'r of Soc. Sec., 273 F. App'x 211, 213 n.1 (3d Cir. 2008) (citing 42 U.S.C. § 1382c(3)(A)).  She was required to "prove her medical condition and [the resulting] functional limitations." Esposito v. Apfel, No. 99-771, 2000 WL 218119, at *4 (E.D. Pa. Feb. 24, 2000) (citing Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Torres v. Schweiker, 682 F.2d 109, 111 (3d Cir. 1982)).  The ALJ's hypothetical on which the decision ultimately relied contained all of the limitations found by the ALJ, and substantial evidence supports her findings.  Although the ALJ proffered additional limitations to the VE, including that the hypothetical person would be off-task 20 percent of the workday and be absent from work two to three days a month due to fatigue, see R. at 49, the ALJ ultimately did not find that those additional limitations were credibly established.

Cf. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("[W]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." (quoting Podedworny, 745 F.2d at 218)). Accordingly, the ALJ's decision not to adopt the response of the VE to one of her proposed hypotheticals was not in error.

## VI.    CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Request for Review will be denied and dismissed. An appropriate order follows.

Dated: September 30, 2021

BY THE COURT:


/s/ Marilyn Heffley
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE